Joseph L. Breitenbach
CHRISTENSEN FULTON & FILZ, PLLC
19 36th Street W, Suite 3
Billings, MT 59102-4303
(406) 248-3100 telephone
(406) 248-7908 facsimile
jlb@cfflawfirm.net

RECEIVED
JUL 14 2022
U.S. Attorney's Office
Billings, Montana

OFFICE CLERK OF DISTRICT COURT
VALLEY COUNTY
FILED
JUN 13 2022
SHELLEY BRYAN

Benjamin O. Rechtfertig
HEDGER FRIEND, PLLC
2800 Central Avenue, Suite C
Billings MT 59102
Phone: (406) 896-4100
Facsimile: (406) 896-4199
brechtfertig@hedgerlaw.com
*Attorneys for Plaintiff*

**MONTANA SEVENTEENTH JUDICIAL DISTRICT COURT, VALLEY COUNTY**

CHRISTOPHER TRAVIS, individually and derivatively on behalf of MILK RIVER HUNTING PRESERVE, LLC, a dissolved Montana limited liability company,

Plaintiff,

vs.

JOHN KEVIN MOORE, KIRK ALLEN SCOGGINS, STEVEN SHRADER and DEBRA SHRADER d/b/a DAYTRONICS, DAYTRONICS, LLC, an Idaho limited liability company, MICHAEL WELCOME, THE COMMISSIONER OF SECURITIES AND INSURANCE, OFFICE OF THE MONTANA STATE AUDITOR, the UNITED STATES DEPARTMENT OF JUSTICE, JOHN DOES I-X, and all other unknown heirs or any unknown devisees of any deceased person, or any other person, unknown, who claim or may claim any right, title, estate, or interest therein or lien or encumbrance thereon adverse to Plaintiff's ownership or any cloud upon Plaintiff's title thereto, whether such claim or possible claim be present or contingent,

Defendants.

Cause No.: DV-2022-24

Judge Yvonne Laird

**VERIFIED COMPLAINT**

COMES NOW, Plaintiff Christopher Travis, individually and derivatively on behalf of Milk River Hunting Preserve, LLC, and for his Verified Complaint against the above-named Defendants, hereby alleges and avers as follows:

**PARTIES**

1. Plaintiff Christopher Travis ("Travis") is a resident of Flathead County, Montana.

2. Plaintiff Milk River Hunting Preserve, LLC ("Milk River"), is a dissolved Montana limited liability company with its principal place of business located in Valley County, Montana. Milk River is the title owner of the real property that is the subject of this lawsuit.

3. Defendant John Kevin Moore ("Moore") is a resident of Flathead County, Montana, currently residing at FCI Morgantown, a federal correctional facility located in Morgantown, West Virginia.

4. Defendant Kirk Allen Scoggins ("Scoggins") is a resident of Flathead County, Montana.

5. Based upon information and belief, Defendants Steven Shrader and Debra Shrader ("Shrader") are residents of Ada County, Idaho, doing business as Daytronics.

6. Defendant Daytronics, LLC, is named as a grantee under a Quitclaim of Corporate Interest dated July 20, 2018. The Quitclaim purports to convey an interest in Milk River. Based upon information and belief, Daytronics, LLC does not exist, and the intent of the Quitclaim was to convey an interest in Milk River to Defendant Shrader d/b/a Daytronics.

7. Based upon information and belief, Defendant Michael Welcome ("Welcome") is a resident of the State of California.

8. Defendant Commissioner of Securities and Insurance, Office of the Montana State Auditor ("State Auditor"), is a state agency authorized to regulate securities transactions and provide restitution assistance in the State of Montana.

9. The United States Department of Justice (hereinafter "U.S.") is an agency of the United States government acting on behalf of the people of the United States of America through the powers vested in the executive branch pursuant to Article 1 of the U.S. Constitution.

10. The names and capacities of DOES I-X are unknown to Plaintiff, who therefore sues said Defendants under these fictitious names.

11. The remaining Defendants are all other persons, unknown, claiming or who might claim any right, title, estate, or interest in or lien or encumbrance upon the real property described in the complaint adverse to ownership or any cloud upon Plaintiff's title, whether the claim or possible claim is present or contingent.

**SUBJECT PROPERTY**

12. The real property that is the subject of this litigation (the "Subject Property"), is owned in fee simple by Defendant Milk River. The Subject Property is located in Valley County, Montana, and is more accurately described as follows:

Township 28 North, Range 41 East, MPM

Section 28: NW¼NW¼
EXCEPTING THEREFROM the Railroad and Highway Right of Way described as follows:

Beginning at the Northwest Section corner of Section 28; thence S. 0D 09' W. a distance of 330.00 feet along the west section line of said Section 28 to the true point of beginning; thence S. 0D 09' W. continuing along the section line a distance of 344.28 feet; thence S. 71D 44' 58" E. a distance of 1392.74 feet; thence N. 0D 13' 32" E. along the 1/16 section line a distance of 334.88 feet; thence N. 71D 23' 18" W. along the Highway R/W line a distance of 696.00 feet to highway station 503+00; thence N. 18D 36' 42"

E. a distance of 20 feet; thence N. 71D 23' 18" W. along the Highway R/W line a distance of 700.11 feet to the point of true beginning.

ALSO EXCEPTING therefrom all of the lands north of the U.S. Highway No. 2 located in the NW¼NW¼ Section 28, Township 28 North, Range 41 East, MPM. (Deed reference: Book 124 Deeds page 852, Doc. No. 36749)

EXCEPTING therefrom lands conveyed to the State of Montana Highway Commission and more particularly described in book 65 of Deeds on pages 613-614.

Section 28: A strip or piece of land 185 feet wide in the E½NW¼ lying between two lines parallel to and distant respectively, 75 feet and 260 feet southwesterly, measured at right angles, from the center line of the main track of the railway of the Great Northern (now Burlington Northern) Railway Company, as now located and constructed. (Deed reference book 63 MRE pages 27-28).

Section 29: All that part of the right of way of the railway of Great Northern, now Burlington Northern, lying between two lines parallel to and distant, respectively, 75 feet and 260 feet Southwesterly, measured at right angles from the centerline of the railway of the Great Northern Railway (now Burlington Northern) Company, as now located and constructed and extending from the East line of said Section 29 Northwesterly to a line drawn at a right angle to said centerline of railway at a point therein distant Northwesterly 800 feet, measured along said center line, from its intersection with the East line of said Section 29. (Deed reference book 61 MRE pages 323-328)

Section 29: Lots 6, 7, 13, 15, S½NE¼

Section 29: Lots 1, 2, 5, 8, 10, 11, N½NE¼ less railroad and highway right-of-way

Section 30: Lot 23

Township 28 North, Range 41 East, MPM

Section 28: Lots 2, 3, 8, 10, SW¼NW¼, NW¼SW¼
EXCEPTING from Lot 2 a tract of land more particularly described in book 17 of Deeds on pages 42-43, Doc. No. 53396 – to Great Northern Railway Company.

**JURISDICTION AND VENUE**

13. This Court possesses jurisdiction over this matter pursuant to Mont. Code Ann. § 70-28-107, Mont. Code Ann. § 3-5-302, Mont. Code Ann. § 35-8-410, Mont. Code Ann. § 35-8-902, Rule 4(b)(1)(C), M. R. Civ. P., and 28 U.S.C. § 2410.

14. Venue for this action is proper in Valley County, Montana, because the Subject Property is located in Valley County, Montana, and the principal place of business of the limited liability company which is the title owner of the Subject Property was located in Valley County, Montana.

**FACTUAL ALLEGATIONS**

15. On or about October 25, 2001, Plaintiff Travis, Defendant Moore, William Mihram, and Otto Kruppa, dba Aspen Group LTD, entered into a Contract for Deed with James David Girtman and Mildred E. Girtman for the purchase of the following lands located in Valley County, Montana, to wit:

Township 28 North, Range 41 East, MPM

Section 28: NW¼NW¼ (less railroad and highway rights of way), and

A strip or piece of land 185 feet wide in the E½NW¼ lying between two lines parallel to and distant respectively, 75 feet and 260 feet southwesterly, measured at right angles, from the center line of the main track of the railway of the Great Northern (now Burlington Northern) Railway Company, as now located and constructed. (Deed reference book 63 MRE pages 27-28)

Section 29: Lots 1, 2, 5, 6, 7, 8, 10, 11, 13, 15, S½NE¼, N½NE¼ less railroad and highway right-of-way, and

All that part of the right of way of the railway of Great Northern, now Burlington Northern, lying between two lines parallel to and distant, respectively, 75 feet and 260 feet Southwesterly, measured at right angles from the centerline of the railway of the Great Northern Railway (now Burlington Northern) Company, as now located and constructed and extending from the East line of said Section 29 Northwesterly to a line drawn at a right angle to said centerline of railway at a point therein

distant Northwesterly 800 feet, measured along said center line, from its intersection with the East line of said Section 29. (Deed reference book 61 MRE pages 323-328)

Section 30: Lot 23

16. On or about September 3, 2003, William Mihram and Otto Kroupa (sic) c/o Aspen Group quitclaimed their interest in the Contract for Deed to Moore.

17. On October 8, 2003, Travis, Moore, and Defendant Scoggins filed Articles of Organization to establish Milk River Hunting Preserve, LLC, as a member managed limited liability company. Travis, Moore and Scoggins simultaneously entered into an Operating Agreement and adopted Initial Resolutions which provided that each member would receive an undivided 1/3 ownership interest in the LLC.

18. Based upon information and belief, at some time prior to the establishment of Milk River, Moore conveyed a 25% interest in the Contract for Deed to Scoggins and/or Go Big Mountain Ventures, LLC, a Montana limited liability company of which Scoggins was a member.

19. In March of 2003, Travis, Moore and Scoggins/Go Big Mountain Ventures assigned their interest in the Contract for Deed to Milk River.

20. Milk River satisfied its obligations under the Contract for Deed. Accordingly, a Warranty Deed for the lands subject to the Contract for Deed was recorded on March 18, 2004, as Document No. 124634 in the office of the Clerk and Recorder of Valley County.

21. On or about December 8, 2006, Milk River acquired an additional 200 acres of land by way of a Warranty Deed from Russell Gilbertson, as Grantor, recorded as Document No. 132582 in the office of the Clerk and Recorder of Valley County, which conveyed to Milk River the following lands located in Valley County, Montana, to wit:

Township 28 North, Range 41 East

Section 28: Lots 2, 3, 8, 10, SW¼NW¼, NW¼SW¼
EXCEPTING from Lot 2 a tract of land more particularly described in book 17 of Deeds on pages 42-43, Doc. No. 53396 – to Great Northern Railway Company.

22. On or about December 15, 2006, Travis, Moore and Scoggins, as members of Milk River, entered into a Unit Purchase Agreement with Defendant Michael Welcome, in which Welcome agreed to purchase 25 of 100 membership units in the LLC, making him an equal partner in the company.

23. On January 1, 2007, Travis, Moore, Scoggins and Welcome entered into a Member's Agreement which stated that each member possessed an undivided 25% ownership interest in the LLC.

24. Based upon information and belief, Welcome may have subsequently sold or otherwise conveyed his ownership interest in Milk River to Moore.

25. Milk River was administratively dissolved by the Montana Secretary of State on December 1, 2011, for its failure to file annual reports.

26. On or about October 4, 2013, Moore obtained a default judgment against Scoggins in the Eleventh Judicial District Court, Flathead County, under Cause No. DV-12-146(C). Moore was awarded a money judgment and received an order expelling Scoggins from Milk River Hunting Preserve, LLC. Moore's judgment against Scoggins was subsequently set aside pursuant to the District Court's Order and Rationale dated January 8, 2014.

27. On September 20, 2016, then Montana Securities Commissioner Monica J. Lindeen filed a Petition for Injunctive Relief against Moore in the Eleventh Judicial District Court, Flathead County, under Cause No. DV-16-794 D. The Commissioner

alleged that Moore had engaged in widespread securities fraud, and as a result thereof requested a temporary restraining order enjoining Moore from engaging in further securities business practices and restraining him from encumbering, disposing of, or transferring any of his assets. The Court granted the Commissioner's request for a restraining order that same day.

28. On June 8, 2017, Moore was federally indicted on ten criminal counts, including Wire Fraud and Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity. A Superseding Indictment was filed on July 12, 2018, which consisted of twenty-one counts including Wire Fraud, Money Laundering, Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity, and False Statements.

29. On November 20, 2017, the Eleventh Judicial District Court denied a request by Moore to sell his interest in Milk River, alleging that his entire interest in the property was "tainted by his fraudulent scheme."

30. On July 20, 2018, Moore, through his Agent and Attorney-in-Fact Tom Colligan, purported to Quit Claim all of his ownership interest in Milk River to Daytronics, LLC, an Idaho limited liability company, pursuant to a "Quitclaim of Corporate Interest". More specifically, Moore purported to convey a 75% interest in the ownership of Milk River to Daytronics.

31. On the date of execution of the Quitclaim of Corporate Interest, Moore did not possess a 75% ownership interest in Milk River.

32. Based on information and belief, Daytronics, LLC does not exist. Rather, Daytronics is an assumed business name used by Defendants Steven Shrader and Debra Shrader.

33. Based upon information and belief, at some point during 2018, Moore, on behalf of Milk River but without the knowledge or authority of its other members, entered into an agricultural lease (the "Lease") with Russ Gilbertson for a term of five years for $25,000, all paid up front. Moore did not deposit those funds in Milk River's bank account. Rather, he instructed Gilbertson to write the check directly to Moore's criminal defense attorneys in Los Angeles, CA. Two years remain on the Lease.

34. On August 3, 2018, Moore was found guilty on all twenty-one federal charges after a jury trial. He was ordered to pay $2,222,817 to his victims in restitution and $1,926,725 in forfeiture to the United States government. He was thereafter sentenced to ten years and five months in federal prison.

35. The only asset of value owned by Milk River is the Subject Property. Travis, on behalf of the company, desires to sell the Subject Property to a third-party purchaser for $950,000.00. The Subject Property recently appraised for $990,000.00, but the proposed sale would not be subject to any realtor fees. However, closing of the proposed sale is contingent on obtaining an order from this Court that 1) quiets title to the Subject Property exclusively in the name of Milk River Hunting Preserve, LLC, 2) authorizes the winding up of the LLC and approves the proposed sale, 3) adjudicates each potential member's ownership interest percentage in the LLC, and 4) appoints an individual to sign any and all documents necessary to carry out the proposed sale.

36. Through preliminary discussions with Valley County Abstract Company, Travis has learned that absent the completing of the aforementioned tasks, neither the company nor its members or the proposed purchaser will be able to obtain insurable title to the Subject Property.

37. As a result of Moore's arrest and the additional absence of Scoggins and Shrader, Travis was left on his own to pay the mortgage loan on the Subject Property, which recently came due with a final balloon payment of $225,917.29 on March 28, 2022. In total, Travis was forced to pay approximately $381,279.31 toward the loan. Travis was also left to pay all of Milk River's other continuing liabilities. From October of 2016 through May of 2022, Travis was forced to expend the following approximate amounts to preserve the assets of the LLC, with these amounts continuing to accrue:

| | |
|---|---|
| Mortgage Payments | $381,279.31 |
| Property Taxes | $36,339.47 |
| Insurance | $11,146.78 |
| Electricity | $10,697.85 |
| Water | $1,551.04 |
| ATV | $1,000.00 |
| Caretaker | $800.00 |
| **Total** | **$442,814.45** |

## COUNT I – DECLARATORY JUDGMENT (LLC OWNERSHIP INTERESTS)

38. Travis hereby incorporates the allegations contained in Paragraph Nos. 1-37 above as if fully set forth herein.

39. Travis requests declaratory relief from the Court pursuant to the Uniform Declaratory Judgments Act, Mont. Code Ann. § 27-8-101, et seq., to resolve the uncertainty regarding the current membership/ownership of Milk River.

40. Pursuant to Mont. Code Ann. § 35-8-410, a member of an LLC possesses the right to maintain an action against the company or its members for legal and equitable relief to enforce a member's rights under the Operating Agreement or otherwise protect the interests of the member, including rights and interests arising independently of the member's relationship to the company.

41. At all times relevant to this Verified Complaint, Travis was a member of Milk River.

42. Pursuant to the language of the Operating Agreement, Member's Agreements, Deeds, Assignments, and other written and recorded documents, Travis possesses an ownership interest in the company. At the very least, Travis owns a 25% interest in the Milk River, and likely more.

43. The remaining members of the company and their percentage interest in the company is unclear, largely as a result of the multiple purported agreements, deeds and/or transfers entered into or executed by Moore or his Attorney-in-Fact, some of which were executed while the company was administratively dissolved, while a valid and enforceable restraining order was in place at the request of the Montana Securities Commissioner, and in apparent violation of the transfer restrictions set forth in the Operating Agreement and Member's Agreements.

44. Travis respectfully requests that the Court adjudicate each potential member's ownership interest percentage in Milk River Hunting Preserve, LLC.

45. Travis further requests that the Court issue an order setting forth the current owners/members of Milk River and the corresponding percentage ownership of each.

**COUNT II – (WINDING UP OF LLC AND APPROVAL OF SALE)**

46. Travis hereby incorporates the allegations contained in Paragraph Nos. 1-45 above as if fully set forth herein.

47. On December 1, 2011, Milk River was administratively dissolved pursuant to Mont. Code Ann. § 35-8-209 for failure to timely file annual reports. Because the company has been administratively dissolved for more than five years, the members are

precluded from seeking reinstatement for the purpose of carrying on its business. Mont. Code Ann. § 35-8-912.

48. Pursuant to Mont. Code Ann. § 35-8-901(2), a limited liability company may continue after dissolution for the limited purpose of winding up its business.

49. Pursuant to Mont. Code Ann. § 35-8-903, this Court, upon application of any member, may for cause shown wind up the business and affairs of a limited liability company. Members with the authority to manage the company may also wind up the company. *Id.*

50. Good cause exists for the Court to facilitate and assist Travis in the winding up of the affairs of the company. Membership in the company is uncertain, rendering a winding up of affairs by or with the other members virtually impossible. Moreover, at least one potential member has been adjudicated to have "tainted" the company assets with his "fraudulent scheme," constituting "wrongful conduct" as set forth under the aforementioned statute sufficient to trigger involvement of the Court in the winding up process.

51. Travis respectfully requests that the Court, pursuant to its statutory authority, order the winding up of the company and assist him in winding up its affairs by approving the proposed sale of the Subject Property to the third-party and explicitly designating him with the authority to sell and transfer the property and to thereafter distribute the assets of the company.

**COUNT III – REIMBURSEMENT FOR PAYMENT OF COMPANY LIABILITIES**

52. Travis hereby incorporates the allegations contained in Paragraph Nos. 1-51 above as if fully set forth herein.

53. As a result of the failure of the other potential members of the company to contribute to Milk River's ongoing liabilities, Travis has been forced to expend approximately $442,814.45 to date to pay the mortgage, insurance, property taxes, electricity, water, caretaker fees and other bills associated with the Subject Property. These liabilities remain ongoing. Without Travis' continued payment of these liabilities, the Subject Property would have been lost to foreclosure or for failure to pay property taxes. Moreover, by continuing to pay for water, electricity, and caretaker fees, Travis has ensured that the Subject Property remains a viable asset for himself and the other potential members of Milk River.

54. Pursuant to Mont. Code Ann. § 35-8-504, the company or its members are liable to Travis for reimbursement of each member's proportionate share of the liabilities incurred by Travis to maintain the Subject Property as a viable asset.

55. Alternatively, pursuant to Article 5 of the Operating Agreement of Milk River Hunting Preserve, LLC, Travis is entitled to a credit to his capital account for all liabilities he has paid on behalf of the company since 2016.

56. Alternatively, Travis is a creditor of the company for the liabilities he has incurred pursuant to Mont. Code Ann. § 35-8-905, and as such is entitled to reimbursement from the company or its other potential members for their proportionate share of said liabilities.

57. Alternatively, Travis is entitled to a constructive trust in his favor for the other potential members' proportionate share of the liabilities incurred by him on behalf of the company since 2016. In the absence of such relief, the other members would be unjustly enriched. Travis may also be entitled to other equitable relief under Montana law.

58. Travis respectfully requests that the Court determine the total amount of liabilities incurred by him on behalf of the company and order the company or the other members of Milk River to reimburse him for their proportionate share of those liabilities.

**COUNT IV – DISTRIBUTION OF PROCEEDS**

59. Travis hereby incorporates the allegations contained in Paragraph Nos. 1-58 above as if fully set forth herein.

60. Pursuant to Mont. Code Ann. § 35-8-905, upon the winding up of a limited liability company, assets must first be distributed to creditors, then to members in satisfaction of liabilities, and then to the individual members in the proportions to which the members share in distributions.

61. In order to satisfy some or all of Moore's remaining restitution obligations, the United States Department of Justice and/or the State Auditor may seek to claim an interest in a portion of the proceeds of the sale of the Subject Property to the extent any are adjudicated as belonging to Moore.

62. Pursuant to Mont. Code Ann. § 35-8-903(2)(e), this Court and Travis possess the authority in winding up the company to discharge liabilities and distribute the remaining assets to members.

63. Travis respectfully requests that the Court adjudicate and determine any interest that any party may have in the proceeds from the sale of the Subject Property, including but not limited to the U.S. Department of Justice and the State Auditor.

64. Travis further requests that the Court thereafter issue an order authorizing Travis to distribute the assets of the company to all required parties, including all

amounts due and owing to Travis by the other members to reimburse him for their proportionate share of company liabilities he has incurred.

**COUNT V – QUIET TITLE**

65. Travis hereby incorporates the allegations contained in Paragraph Nos. 1-64 above as if fully set forth herein.

66. Travis possesses the right to bring this quiet title action on behalf of Milk River Hunting Preserve, LLC on two statutory bases.

67. First, Travis possesses the right to bring a derivative action on behalf of the company pursuant to Mont. Code Ann. § 35-8-1104. Because the LLC has been administratively dissolved for approximately ten years and it is entirely unclear which individuals currently possess an ownership interest in the company, no amount of effort by Travis could have resulted in other members of the dissolved LLC commencing this action with the statutory or contractual authority to do so. Travis could not conclusively identify any other current member of the LLC who could consent to or provide the authority to prosecute this quiet title action.

68. As a second and alternative statutory basis, any person winding up the affairs of a company "may, in the name of and on behalf of the company ... prosecute and defend suits." Mont. Code Ann. § 35-8-904(2)(a).

69. The bringing of this quiet title action on behalf of the company is necessary to secure the insurable title required to complete the proposed sale of the Subject Property.

70. Milk River lawfully obtained ownership of the Subject Property pursuant to two Warranty Deeds, the first recorded on March 18, 2004, as Document No. 124634,

and the other recorded on December 8, 2006, as Document No. 132582, in the office of the Clerk and Recorder of Valley County.

71. No other individual or entity, known or unknown, possesses an ownership interest in the Subject Property.

72. The Subject Property is currently subject to one valid and enforceable encumbrance, the aforementioned agricultural lease executed in favor of Russ Gilbertson.

73. Travis respectfully requests that the Court issue an order recognizing the agricultural lease but otherwise quieting title of the Subject Property in the name of Milk River Hunting Preserve, LLC.

WHEREFORE, Plaintiff Christopher Travis prays for judgment as follows:

1. That the Court adjudicate each potential member's ownership interest percentage in Milk River Hunting Preserve, LLC;
2. That the Court issue an order setting forth the current owners/members in Milk River and the corresponding percentages of ownership of each member in the company;
3. That the Court, pursuant to its statutory authority, order the winding up of the company and assist Travis in winding up its affairs by approving the proposed sale of the Subject Property and designating him with the authority to sell and transfer the property and to thereafter distribute the assets of the company;
4. That the Court determine the total amount of liabilities incurred by Travis on behalf of the company and order the company or other current members of Milk River, as adjudicated by this Court, to reimburse Travis for their proportionate share of those liabilities;

5. That the Court adjudicate and determine any interest that any party may have in the proceeds from the sale of the Subject Property;
6. That the Court issue an order authorizing Travis to distribute the assets of the company to all required parties, including all amounts due and owing to Travis by the other members to reimburse him for their proportionate share of company liabilities he has incurred;
7. That the Court issue an order recognizing the Gilbertson agricultural lease but otherwise divesting any other defendant or other individual or entity of any and all interest in and quieting title to the Subject Property in the name of Milk River Hunting Preserve, LLC;
8. That all other Defendants be required to state fully the nature of their claim or claims, if any, and that the adverse claims of Defendants, both known and unknown, be determined by decree of this Court;
9. That Travis be awarded his costs and attorney's fees incurred in connection with these proceedings as allowed under Mont. Code Ann. §§ 27-8-313, 35-8-1104, Article 10.4 of the Operating Agreement, Paragraph 11 of the Unit Purchase Agreement, and any other contractual, statutory, or legal basis allowed under Montana law; and
10. For such other and further relief as this Court may deem just and equitable.

Dated this 9th day of June, 2022.

CHRISTENSEN, FULTON & FILZ, PLLC

By ______________________
Joseph Breitenbach
Attorney for Plaintiff

**VERIFICATION**

Christopher Travis, being first duly sworn, deposes and states:

I am the named Plaintiff in the above titled matter. I have read the foregoing Verified Complaint and know the contents thereof. The facts and matters contained herein are true, accurate and complete to the best of my own knowledge, except as to those matters stated on information and belief, and, as to them, I believe them to be true.

Christopher Travis

STATE OF MONTANA )
:ss.
County of Flathead )

Subscribed and sworn to before me this 6th day of June, 2022, by Christopher Travis.

BECCA BRANDEWIE
NOTARY PUBLIC for the State of Montana
Residing at Bigfork, Montana
My Commission Expires January 27, 2024

Becca Brandewie [Print Name]
Notary Public for the State of Montana
Residing at Bigfork, MT

(SEAL)

RECEIVED
JUL 14 2022
U.S. Attorney's Office
Billings, Montana

Joseph L. Breitenbach
CHRISTENSEN FULTON & FILZ, PLLC
19 36th Street W, Suite 3
Billings, MT 59102-4303
(406) 248-3100 telephone
(406) 248-7908 facsimile
jlb@cfflawfirm.net

Benjamin O. Rechtfertig
HEDGER FRIEND, PLLC
2800 Central Avenue, Suite C
Billings MT 59102
Phone: (406) 896-4100
Facsimile: (406) 896-4199
brechtfertig@hedgerlaw.com
*Attorneys for Plaintiff*

**MONTANA SEVENTEENTH JUDICIAL DISTRICT COURT, VALLEY COUNTY**

CHRISTOPHER TRAVIS, individually and derivatively on behalf of MILK RIVER HUNTING PRESERVE, LLC, a dissolved Montana limited liability company,

Plaintiff,

vs.

JOHN KEVIN MOORE, KIRK ALLEN SCOGGINS, STEVEN SHRADER and DEBRA SHRADER d/b/a DAYTRONICS, DAYTRONICS, LLC, an Idaho limited liability company, MICHAEL WELCOME, THE COMMISSIONER OF SECURITIES AND INSURANCE, OFFICE OF THE MONTANA STATE AUDITOR, the UNITED STATES DEPARTMENT OF JUSTICE, JOHN DOES I-X, and all other unknown heirs or any unknown devisees of any deceased person, or any other person, unknown, who claim or may claim any right, title, estate, or interest therein or lien or encumbrance thereon adverse to Plaintiff's ownership or any cloud upon Plaintiff's title thereto, whether such claim or possible claim be present or contingent,

Defendants.

Cause No.: DV-2022-24

Judge Yvonne Laird

**SUMMONS – UNITED STATES DEPARTMENT OF JUSTICE**

TO: UNITED STATES DEPARTMENT OF JUSTICE

A lawsuit has been filed against you.

Pursuant to 28 U.S.C. § 2410(b), within sixty (60) days you must serve on the plaintiffs an answer to the attached Complaint or a motion under Rule 12 of the Montana Rules of Civil Procedure. Do not include the day you were served in the calculation of time. The answer or motion must be served on the plaintiff or the plaintiff's attorney, if plaintiff is represented by an attorney, whose name and address are listed above.

If you fail to respond, judgment by default will be entered against you for the relief demanded in the Complaint.

You must also file your answer or motion with the Court.

Included in this action is a claim to quiet title to various parcels of real property situated in Valley County, Montana, legally described as follows:

<u>Township 28 North, Range 41 East, MPM</u>

Section 28: NW¼NW¼
EXCEPTING THEREFROM the Railroad and Highway Right of Way described as follows:

Beginning at the Northwest Section corner of Section 28; thence S. 0D 09' W. a distance of 330.00 feet along the west section line of said Section 28 to the true point of beginning; thence S. 0D 09' W. continuing along the section line a distance of 344.28 feet; thence S. 71D 44' 58" E. a distance of 1392.74 feet; thence N. 0D 13' 32" E. along the 1/16 section line a distance of 334.88 feet; thence N. 71D 23' 18" W. along the Highway R/W line a distance of 696.00 feet to highway station 503+00; thence N. 18D 36' 42" E. a distance of 20 feet; thence N. 71D 23' 18" W. along the Highway R/W line a distance of 700.11 feet to the point of true beginning.

ALSO EXCEPTING therefrom all of the lands north of the U.S. Highway No. 2 located in the NW¼NW¼ Section 28, Township 28 North, Range

41 East, MPM. (Deed reference: Book 124 Deeds page 852, Doc. No. 36749)

EXCEPTING therefrom lands conveyed to the State of Montana Highway Commission and more particularly described in book 65 of Deeds on pages 613-614.

Section 28: A strip or piece of land 185 feet wide in the E½NW¼ lying between two lines parallel to and distant respectively, 75 feet and 260 feet southwesterly, measured at right angles, from the center line of the main track of the railway of the Great Northern (now Burlington Northern) Railway Company, as now located and constructed. (Deed reference book 63 MRE pages 27-28).

Section 29: All that part of the right of way of the railway of Great Northern, now Burlington Northern, lying between two lines parallel to and distant, respectively, 75 feet and 260 feet Southwesterly, measured at right angles from the centerline of the railway of the Great Northern Railway (now Burlington Northern) Company, as now located and constructed and extending from the East line of said Section 29 Northwesterly to a line drawn at a right angle to said centerline of railway at a point therein distant Northwesterly 800 feet, measured along said center line, from its intersection with the East line of said Section 29. (Deed reference book 61 MRE pages 323-328)

Section 29: Lots 6, 7, 13, 15, S½NE¼

Section 29: Lots 1, 2, 5, 8, 10, 11, N½NE¼ less railroad and highway right-of-way

Section 30: Lot 23

<u>Township 28 North, Range 41 East, MPM</u>

Section 28: Lots 2, 3, 8, 10, SW¼NW¼, NW¼SW¼
EXCEPTING from Lot 2 a tract of land more particularly described in book 17 of Deeds on pages 42-43, Doc. No. 53396 – to Great Northern Railway Company.

Situated in Valley County, Montana

DATED this 13th day of June, 2022.

SHELLEY BRYAN
CLERK OF THE DISTRICT COURT

By: ______________________
Deputy Clerk