|  **First American Title**™ | Litigation Guarantee |
| --- | --- |
| | ISSUED BY |
| | **First American Title Insurance Company** |
| **Guarantee** | GUARANTEE NUMBER |
| | 5015830-0002507e |

SUBJECT TO THE LIMITATIONS CONTAINED HEREIN, THE EXCLUSIONS FROM COVERAGE, THE LIMITS OF LIABILITY AND OTHER PROVISIONS OF THE CONDITIONS AND STIPULATIONS HERETO ANNEXED AND MADE A PART OF THIS GUARANTEE,

**FIRST AMERICAN TITLE INSURANCE COMPANY**
a Nebraska corporation, herein called the Company

**GUARANTEES**

the Assured named in Schedule A against loss not exceeding the liability amount stated in Schedule A which the Assured shall sustain by reason of any incorrectness in the assurance which the Company hereby gives that, according to the public records, as of Date of Guarantee shown in Schedule A:

1. The title to the herein described estate or interest is vested in the vestee named in Schedule A.

2. Except for the matters shown in Schedule B, there are no defects, liens, encumbrances or other matters affecting title to the estate or interest in the land shown in Schedule A, which matters are not necessarily shown in the order of their priority.

3. a) The current interest holders claiming some right, title or interest by reason of the matters shown in Part II of Schedule B are as shown therein. The vestee named in Schedule A and parties claiming to have some right, title or interest by reason of the matters shown in Part II of Schedule B may be necessary to name defendant in an action, the nature of which is referred to in Schedule A.

   b) The current interest holders claiming some right, title or interest by reason of the matters shown in Part I of Schedule B may also be necessary to name defendant in an action, the nature of which is referred to in Schedule A. However, no assurance is given hereby as to those current interest holders.

4. The return address for mailing after recording, if any, as shown on each and every document referred to in Part II of Schedule B by specific recording information, and as shown on the document(s) vesting title as shown in Schedule A are as shown in Schedule C.

THIS LITIGATION GUARANTEE IS FURNISHED SOLELY FOR THE PURPOSE OF FACILITATING THE FILING OF THE ACTION REFERRED TO IN SCHEDULE A. IT SHALL NOT BE USED OR RELIED UPON FOR ANY OTHER PURPOSE.

---

**First American Title Insurance Company**

*[signature]*
Dennis J. Gilmore, President

*[signature]*
Greg L. Smith, Secretary

For Reference:

**File #:** 4766

Issued By:

**Valley County Abstract Company, Inc.**
431 Second Avenue South, P.O. Box 26
Glasgow, MT 59230

This jacket was created electronically and constitutes an original document

**EXHIBIT 1**

Form 5015830 (7-25-14)   Page 1 of 4   Litigation Gua

Policy #: 5015830-0002507e

## SCHEDULE OF EXCLUSIONS FROM COVERAGE OF THIS GUARANTEE

1. Except to the extent that specific assurances are provided in Schedule A of this Guarantee, the Company assumes no liability for loss or damage by reason of the following:
   (a) Defects, liens, encumbrances, adverse claims or other matters against the title, whether or not shown by the public records.
   (b) (1) Taxes or assessments of any taxing authority that levies taxes or assessments on real property; or, (2) Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not the matters excluded under (1) or (2) are shown by the records of the taxing authority or by the public records.
   (c) (1) Unpatented mining claims; (2) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (3) water rights, claims or title to water, whether or not the matters excluded under (1), (2) or (3) are shown by the public records.
2. Notwithstanding any specific assurances which are provided in Schedule A of this Guarantee, the Company assumes no liability for loss or damage by reason of the following:
   (a) Defects, liens, encumbrances, adverse claims or other matters affecting the title to any property beyond the lines of the land expressly described in the description set forth in Schedule (A), (C) or in Part 2 of this Guarantee, or title to streets, roads, avenues, lanes, ways or waterways to which such land abuts, or the right to maintain therein vaults, tunnels, ramps or any structure or improvements; or any rights or easements therein, unless such property, rights or easements are expressly and specifically set forth in said description.
   (b) Defects, liens, encumbrances, adverse claims or other matters, whether or not shown by the public records; (1) which are created, suffered, assumed or agreed to by one or more of the Assureds; (2) which result in no loss to the Assured; or (3) which do not result in the invalidity or potential invalidity of any judicial or non-judicial proceeding which is within the scope and purpose of the assurances provided.
   (c) The identity of any party shown or referred to in Schedule A.
   (d) The validity, legal effect or priority of any matter shown or referred to in this Guarantee.

## GUARANTEE CONDITIONS AND STIPULATIONS

1. **Definition of Terms.**
   The following terms when used in the Guarantee mean:
   (a) the "Assured": the party or parties named as the Assured in this Guarantee, or on a supplemental writing executed by the Company.
   (b) "land": the land described or referred to in Schedule (A)(C) or in Part 2, and improvements affixed thereto which by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule (A)(C) or in Part 2, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways.
   (c) "mortgage": mortgage, deed of trust, trust deed, or other security instrument.
   (d) "public records": records established under state statutes at Date of Guarantee for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge.
   (e) "date": the effective date.
2. **Notice of Claim to be Given by Assured Claimant.**
   An Assured shall notify the Company promptly in writing in case knowledge shall come to an Assured hereunder of any claim of title or interest which is adverse to the title to the estate or interest, as stated herein, and which might cause loss or damage for which the Company may be liable by virtue of this Guarantee. If prompt notice shall not be given to the Company, then all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any Assured unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.
3. **No Duty to Defend or Prosecute.**
   The Company shall have no duty to defend or prosecute any action or proceeding to which the Assured is a party, notwithstanding the nature of any allegation in such action or proceeding.
4. **Company's Option to Defend or Prosecute Actions; Duty of Assured Claimant to Cooperate.**
   Even though the Company has no duty to defend or prosecute as set forth in Paragraph 3 above:
   (a) The Company shall have the right, at its sole option and cost, to institute and prosecute any action or proceeding, interpose a defense, as limited in (b), or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest as stated herein, or to establish the lien rights of the Assured, or to prevent or reduce loss or damage to the Assured. The Company may take any appropriate action under the terms of this Guarantee, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this Guarantee. If the Company shall exercise its rights under this paragraph, it shall do so diligently.
   (b) If the Company elects to exercise its options as stated in Paragraph 4(a) the Company shall have the right to select counsel of its choice (subject to the right of such Assured to object for reasonable cause) to represent the Assured and shall not be liable for and will not pay the fees of any other counsel, nor will the Company pay any fees, costs or expenses incurred by an Assured in the defense of those causes of action which allege matters not covered by this Guarantee.
   (c) Whenever the Company shall have brought an action or interposed a defense as permitted by the provisions of this Guarantee, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from an adverse judgment or order.
   (d) In all cases where this Guarantee permits the Company to prosecute or provide for the defense of any action or proceeding, an Assured shall secure to the Company the right to so prosecute or provide for the defense of any action or proceeding, and all appeals therein, and permit the Company

Policy #: 5015830-0002507e

GUARANTEE CONDITIONS AND STIPULATIONS (Continued)

to use, at its option, the name of such Assured for this purpose. Whenever requested by the Company, an Assured, at the Company's expense, shall give the Company all reasonable aid in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest as stated herein, or to establish the lien rights of the Assured. If the Company is prejudiced by the failure of the Assured to furnish the required cooperation, the Company's obligations to the Assured under the Guarantee shall terminate.

5. **Proof of Loss or Damage.**
   In addition to and after the notices required under Section 2 of these Conditions and Stipulations have been provided to the Company, a proof of loss or damage signed and sworn to by the Assured shall be furnished to the Company within ninety (90) days after the Assured shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the matters covered by this Guarantee which constitute the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the Assured to provide the required proof of loss or damage, the Company's obligation to such assured under the Guarantee shall terminate. In addition, the Assured may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Guarantee, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Assured shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the Assured provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Assured to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in the above paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this Guarantee to the Assured for that claim.

6. **Options to Pay or Otherwise Settle Claims: Termination of Liability.**
   In case of a claim under this Guarantee, the Company shall have the following additional options:
   (a) To Pay or Tender Payment of the Amount of Liability or to Purchase the Indebtedness.
       The Company shall have the option to pay or settle or compromise for or in the name of the Assured any claim which could result in loss to the Assured within the coverage of this Guarantee, or to pay the full amount of this Guarantee or, if this Guarantee is issued for the benefit of a holder of a mortgage or a lienholder, the Company shall have the option

to purchase the indebtedness secured by said mortgage or said lien for the amount owing thereon, together with any costs, reasonable attorneys' fees and expenses incurred by the Assured claimant which were authorized by the Company up to the time of purchase.

Such purchase, payment or tender of payment of the full amount of the Guarantee shall terminate all liability of the Company hereunder. In the event after notice of claim has been given to the Company by the Assured the Company offers to purchase said indebtedness, the owner of such indebtedness shall transfer and assign said indebtedness, together with any collateral security, to the Company upon payment of the purchase price.

Upon the exercise by the Company of the option provided for in Paragraph (a) the Company's obligation to the Assured under this Guarantee for the claimed loss or damage, other than to make the payment required in that paragraph, shall terminate, including any obligation to continue the defense or prosecution of any litigation for which the Company has exercised its options under Paragraph 4, and the Guarantee shall be surrendered to the Company for cancellation.

(b) To Pay or Otherwise Settle With Parties Other Than the Assured or With the Assured Claimant.
    To pay or otherwise settle with other parties for or in the name of an Assured claimant any claim assured against under this Guarantee, together with any costs, attorneys' fees and expenses incurred by the Assured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.
    Upon the exercise by the Company of the option provided for in Paragraph (b) the Company's obligation to the Assured under this Guarantee for the claimed loss or damage, other than to make the payment required in that paragraph, shall terminate, including any obligation to continue the defense or prosecution of any litigation for which the Company has exercised its options under Paragraph 4.

7. **Determination and Extent of Liability.**
   This Guarantee is a contract of Indemnity against actual monetary loss or damage sustained or incurred by the Assured claimant who has suffered loss or damage by reason of reliance upon the assurances set forth in this Guarantee and only to the extent herein described, and subject to the Exclusions From Coverage of This Guarantee.
   The liability of the Company under this Guarantee to the Assured shall not exceed the least of:
   (a) the amount of liability stated in Schedule A or in Part 2;
   (b) the amount of the unpaid principal indebtedness secured by the mortgage of an Assured mortgagee, as limited or provided under Section 6 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and Stipulations, at the time the loss or damage assured against by this Guarantee occurs, together with interest thereon; or
   (c) the difference between the value of the estate or interest covered hereby as stated herein and the value of the estate or interest subject to any defect, lien or encumbrance assured against by this Guarantee.

8. **Limitation of Liability.**
   (a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures any other matter assured against by this Guarantee in a reasonably diligent

Policy #: 5015830-0002507e

manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(b) In the event of any litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title, as stated herein.

(c) The Company shall not be liable for loss or damage to any Assured for liability voluntarily assumed by the Assured in settling any claim or suit without the prior written consent of the Company.

9. **Reduction of Liability or Termination of Liability.**
All payments under this Guarantee, except payments made for costs, attorneys' fees and expenses pursuant to Paragraph 4 shall reduce the amount of liability pro tanto.

10. **Payment of Loss.**
    (a) No payment shall be made without producing this Guarantee for endorsement of the payment unless the Guarantee has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.
    (b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within thirty (30) days thereafter.

11. **Subrogation Upon Payment or Settlement.**
Whenever the Company shall have settled and paid a claim under this Guarantee, all right of subrogation shall vest in the Company unaffected by any act of the Assured claimant.

The Company shall be subrogated to and be entitled to all rights and remedies which the Assured would have had against any person or property in respect to the claim had this Guarantee not been issued. If requested by the Company, the Assured shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The Assured shall permit the Company to sue, compromise or settle in the name of the Assured and to use the name of the Assured in any transaction or litigation involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the Assured the Company shall be subrogated to all rights and remedies of the Assured after the Assured shall have recovered its principal, interest, and costs of collection.

**GUARANTEE CONDITIONS AND STIPULATIONS (Continued)**

12. **Liability Limited to This Guarantee; Guarantee Entire Contract.**
    (a) This Guarantee together with all endorsements, if any, attached hereto by the Company is the entire Guarantee and contract between the Assured and the Company. In interpreting any provision of this Guarantee, this Guarantee shall be construed as a whole.
    (b) Any claim of loss or damage, whether or not based on negligence, or any action asserting such claim, shall be restricted to this Guarantee.
    (c) No amendment of or endorsement to this Guarantee can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

13. **Notices, Where Sent.**
All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this Guarantee and shall be addressed to the Company at **First American Title Insurance Company, Attn: Claims National Intake Center, 1 First American Way, Santa Ana, California 92707.**



| First American Title | **Litigation Guarantee** |
|---|---|
| | ISSUED BY |
| | **First American Title Insurance Company** |
| **Schedule A** | Guarantee Number |
| | **5015830-0002507e** |

Order No. 4766

Liability $950,000.00

Date of Guarantee: January 3, 2022 at 7:00 A.M.

Fee $2,475.00

1. Name of Assured:

   Joey Breitenbach, Hedger Friend, PLLC

2. This Litigation Guarantee is furnished solely for the purpose of facilitating the filing of an action to:

   File a quiet title action / corporate dissolution action

3. The estate or interest in the Land which is covered by this guarantee is:

   Fee simple

4. Title to the estate or interest in the Land is vested in:

   Milk River Hunting Preserve, LLC

**Order No. 4766**
**5015830-0002507e**

5.    The Land referred to in this Guarantee is described as follows:

Township 28 North, Range 41 East, MPM
Section 28:    NW¼NW¼
    EXCEPTING THEREFROM the Railroad and Highway Right of Way described as follows:
    Beginning at the Northwest Section corner of Section 28; thence S. 0D 09' W. a distance of 330.00 feet along the west section line of said Section 28 to the true point of beginning; thence S. 0D 09' W. continuing along the section line a distance of 344.28 feet; thence S. 71D 44' 58" E. a distance of 1392.74 feet; thence N. 0D 13' 32" E. along the 1/16 section line a distance of 334.88 feet; thence N. 71D 23' 18" W. along the Highway R/W line a distance of 696.00 feet to highway station 503+00; thence N. 18D 36' 42" E. a distance of 20 feet; thence N. 71D 23' 18" W. along the Highway R/W line a distance of 700.11 feet to the point of true beginning.
    ALSO EXCEPTING therefrom all of the lands north of the U.S. Highway No. 2 located in the NW¼NW¼ Section 28, Township 28 North, Range 41 East, MPM. (Deed reference: Book 124 Deeds page 852, Doc. No. 36749)
    EXCEPTING therefrom lands conveyed to the State of Montana Highway Commission and more particularly described in book 65 of Deeds on pages 613-614.

Section 28:    A strip or piece of land 185 feet wide in the E½NW¼ lying between two lines parallel to and distant respectively, 75 feet and 260 feet southwesterly, measured at right angles, from the center line of the main track of the railway of the Great Northern (now Burlington Northern) Railway Company, as now located and constructed. (Deed reference book 63 MRE pages 27-28)

Section 29:    All that part of the right of way of the railway of Great Northern, now Burlington Northern, lying between two lines parallel to and distant, respectively, 75 feet and 260 feet Southwesterly, measured at right angles from the centerline of the railway of the Great Northern Railway (now Burlington Northern) Company, as now located and constructed and extending from the East line of said Section 29 Northwesterly to a line drawn at a right angle to said centerline of railway at a point therein distant Northwesterly 800 feet, measured along said center line, from its intersection with the East line of said Section 29. (Deed reference book 61 MRE pages 323-328)

Section 29:    Lots 6, 7, 13, 15, S½NE¼
Section 29:    Lots 1, 2, 5, 8, 10, 11, N½NE¼ less railroad and highway right-of-way
Section 30:    Lot 23

Township 28 North, Range 41 East, MPM
Section 28:    Lots 2, 3, 8, 10, SW¼NW¼, NW¼SW¼
    EXCEPTING from Lot 2 a tract of land more particularly described in book 17 of Deeds on pages 42-43, Doc. No. 53396 - to Great Northern Railway Company

Situated in Valley County, Montana



| First American Title | **Litigation Guarantee** |
|---|---|
| | ISSUED BY |
| | **First American Title Insurance Company** |
| **Schedule B** | Guarantee Number |
| | 5015830-0002507e |

Order No. 4766

Defects, liens, encumbrances or other matters affecting title:

**Part I**

1. Taxes for 2021 are in the amount of $5,025.17 – 1st installment is delinquent in the amount of $2,527.64, plus penalty and interest; 2nd installment in the amount of $2,497.53 is due and payable on or before May 31, 2022.

2. Taxes for 2022 are now a lien but not yet due and payable. Tax Parcel ID #1002896000, #1000407102.

3. Public right and easements for commerce, recreation, navigation and fishery for any and all rivers and creeks.

4. The title to a portion of this land may have been lost due to changes in the mean low water line of the Milk River. The policy is subject to any claim or loss arising from the mean low water line not being coincidental with the original Government Survey and the policy is subject to any loss or claim arising from lands which may be have acquired through accretion, alluvion or changes in the river channel.

5. Right, title and interest of the State of Montana within the natural bed of the Milk River below the ordinary low water line, and also excepting any artificial accretions waterward of said ordinary low water line.

6. Easement for Right of Way dated October 24, 1951 recorded November 21, 1951, book 23 page 152; to Gertrude P. Kjellman – first party hereby grants unto second party an easement for right of way purposes, a strip of land described as being East 30 feet of the E½NW¼, lying south of the Great Northern Right of way Section 28, Township 28 North, Range 41 East, MPM. The intention of this easement is to grant unto second party a right of way of travel from the present road paralleling the G.N. right of way and her farm unit lying in Section 28, Township 28 North, Range 41 East, MPM.

7. Easement and Right of Way Contract dated December 11, 1973 recorded December 28, 1977 at 9:00 A.M., recorded in book 59 of MRE on page 641, Doc. No. 17184; to Valley Rural Telephone – SW¼NE¼ Section 29, Township 28 North, Range 41 East, MPM.

Form 5002530-C (8/1/09)

**Order No. 4766**
**5015830-0002507e**

8. Main Pipeline Easement and Temporary Construction Easement dated March 27, 2018 recorded June 3, 2019 as Doc. No. 166353; to Dry Prairie Rural Water Authority – Lots 1, 2, 5, 8, 10, 11, N½NE¼, less 11 ac Hwy & RR Section 29, Township 28 North, Range 41 East.

9. Branch Pipeline Easement and Temporary Construction Easement dated March 27, 2018 recorded June 3, 2019 as Doc. No. 166389; to Dry Prairie Rural Water Authority – Lots 6, 7, 13, 15, S½NE¼ Section 29, Township 28 North, Range 41 East.

10. Any loss or claim from any discrepancies in locations of the actual right of way lines not being as shown on Plat filed March 24, 1981 at 9:00 A.M., Doc. No. 33722; Misc. File No. 21598 or any claim arising from any difference in the meander line of the Milk River as it does now exist with the meander line as shown on the original government survey.

11. Matters disclosed in Resolution No. 3-2009 filed March 27, 2009 as Doc. No. 138958; regarding the Wokal Field / Glasgow International Airport affected areas.

12. County road right-of-ways not recorded and indexed as a conveyance in the office of the Clerk and Recorder pursuant to Title 70, Chapter 21, M.C.A. or roads in place and/or in use.

13. Lack of a right of access to and from the land. Right of access to and from the land, if any, is not established of record and assurance of such right of access is excluded form coverage.

14. Any right, title or interest in any minerals, mineral rights, or related matters including but not limited to oil, gas, coal and other hydrocarbons, sand, gravel or other common variety materials, and all rights, rights of entry and easements incidental thereto whether created by grant or reservation, for the exploration and production of minerals, other mined materials or water, whether or not shown by the public record.

**Order No. 4766**
**5015830-0002507e**

**Part II**

15. Mortgage dated August 2, 2016 recorded September 16, 2016 at 10:27 A.M., Doc. No. 158989; Milk River Hunting Preserve LLC to First Interstate Bank to secure the payment of $304,213.05 with interest, and any other obligations secured thereby.

16. Quitclaim of Corporate Interest dated July 20, 2018 – John Kevin Moore to Daytronics, LLC, an Idaho Limited Liability Company, Entity Number: D3768 at 3313 W. Cherry Lane #806, Meridian ID 83642.

17. Notice of Lien for Fine and/or Restitution imposed pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996 dated May 12, 2021 recorded May 12, 2021 at 4:50 P.M., Doc. No. 173306; United states Attorney's Office, District of Montana - Name of Defendant / Social Security Number:  John Moore / \*\*\*-\*\*-2872; Court Number:  CR-17-42-GF-BMM; Date of Entry of Judgment: January 31, 2019; Court Imposing Judgment: U.S. District Court – District of Montana; Amount of Fine/Restitution:  $2,224,017.00.

END OF SCHEDULE B

Form 5002530-C   (8/1/09)

|  First American Title | **Litigation Guarantee** |
|---|---|
| | ISSUED BY |
| | **First American Title Insurance Company** |
| **Schedule C** | Guarantee Number |
| | **5015830-0002507e** |

Order No. 4766

## ADDRESSES

| Paragraph No: | Recording Information: | Mailing Address: |
|---|---|---|
| Schedule A, Paragraph #4 | QCD recorded 11/10/03, Book 146 D page 791, Doc. No. 123906 | Milk River Hunting Preserve, LLC PO Box 1724 Bigfork, MT 59911-1724 |
| | QCD recorded 11/10/03, Book 146 Deeds page 792, Doc. No. 123908 | |
| | QCD recorded 11/14/03, Book 146 Deeds page 804, Doc. No. 123908 | |
| | Warranty Deed recorded 12/08/06, Doc. No. 132582 | |
| Schedule A, Paragraph #4 | Operating Agreement of Milk River Hunting Preserve, LLC Dated October 8, 2003 | Christopher Travis Address Unknown |
| Schedule A, Paragraph #4 | Operating Agreement of Milk River Hunting Preserve, LLC Dated October 8, 2003 | John Kevin Moore Address Unknown |
| Schedule A, Paragraph #4 | Operating Agreement of Milk River Hunting Preserve, LLC Dated October 8, 2003 | Kirk Scoggins Address Unknown |

Order No. 4766
5015830-00025007e

| | | |
|---|---|---|
| Schedule B, Part II, #15 | Mortgage recorded 9/16/2016, Doc. No. 158989; | First Interstate Bank<br>Whitefish Branch<br>306 Spokane Avenue<br>PO Box 100<br>Whitefish, MT 59937-0100 |
| Schedule B, Part II, #16 | | Daytronics, LLC, an Idaho Limited Liability Company,<br>Entity Number: D3768<br>3313 W. Cherry Lane #806,<br>Meridian ID 83642. |
| Schedule B, Part II, #17 | Notice of Lien filed May 12, 2021, Doc. No. 173306 | U.S. Attorney's Office<br>Attn: FLU<br>2601 Second Avenue N<br>Suite 3200<br>Billings, MT 59101 |

END OF SCHEDULE C